IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS,
WESTERN DIVISION

MAIL BOXES, ETC., INC.,                                                                PLAINTIFF,

V.                                      Case No. 4-06-CV-0188 (GH)

PBC SERVICES, INC., TOM WEEDMAN
and CANDICE WEEDMAN,                                                    DEFENDANTS.

### DECLARATION OF ERIC M. JAEGERS

1. My name is Eric M. Jaegers. I am an individual over the age of eighteen (18) years. I have personal knowledge of the matters set forth in this Declaration, and all such matters are true and correct. If sworn as a witness I could testify competently to all such matters.

2. I am an attorney duly licensed to practice law by the States of Kentucky and Texas. I am senior counsel in the Dallas, Texas office of the law firm of Gordon & Rees LLP, which maintains offices throughout California as well as in Texas, Nevada, Oregon, Arizona and New York.

3. I am informed by Matthew D. Murphey, the managing partner of the Dallas office of Gordon & Rees, that on March 6, 2006, he communicated to MBE's counsel a list of MBE witnesses that defendants intended to depose in this matter. That list included Stuart Mathis, Don Higginson, Don Abee, Sherrie Wehner and Craig Stewart.

4. MBE President and CEO Stuart Mathis was supposed to be deposed over the course of three days in connection with the *Morgate* litigation commencing on March 8, 2006 in San Diego, California. By agreement between the parties in this Arkansas lawsuit, defendants PBC and the Weedmans were going to question Mr. Mathis about this Arkansas lawsuit during that deposition. Less than 48 hours before the start of Mr. Mathis' deposition, MBE's Los Angeles Counsel, DLA Piper Rudnick Gray Cary,

produced approximately 2,182 pages of documents to the San Diego office of Gordon & Rees. I am informed by Amy Darby, an associate attorney in Gordon & Rees' San Diego office, that more than 1,000 of those documents pertain to Mr. Mathis' deposition in the *Morgate* litigation pending in California. Some of those documents were produced to Gordon & Rees in response to discovery requests in *Morgate* that were over nine months old, and the rest were produced in response to requests that were over a year old.

5. DLA Piper Rudnick is MBE's lead counsel in the above-captioned case. DLA Piper Rudnick was in charge of defending MBE in the Mathis and Higginson depositions in this case. Less than 36 hours before the Mathis deposition was to begin, DLA Piper Rudnick attorney Gregg Zucker demanded that the San Diego Gordon & Rees attorneys agree that this deposition of Mr. Mathis be the single and only deposition of him in the *Morgate* proceeding, despite the last-minute production of documents.

6. Attached hereto and incorporated herein by reference as **Exhibit A** is a true and correct copy of an e-mail string between Mr. Zucker and Ms. Darby dated March 6, 2006 evidencing Mr. Zucker's threat to take Mr. Mathis' deposition off-calendar unless Ms. Darby agreed to his demand. Ms. Darby could not agree to this demand, and on March 7, DLA Piper Rudnick attorneys unilaterally cancelled the Mathis deposition.

7. Attached hereto and incorporated herein by reference as **Exhibit B** is a true and correct copy of an e-mail dated March 7, 2006 at 3:16 p.m. from MBE's local counsel, Bill Allen, to Mr. Murphey of Gordon & Rees stating that Mr. Higginson was no longer available for his scheduled deposition due to an unidentified scheduling "problem." MBE attorneys also refused to produce Ms. Wehner for deposition unless defendants provided them with a statement of "relevance" for her testimony. Defendants did not depose Ms. Wehner in this matter.

8. Attached hereto and incorporated herein by reference as **Exhibit C** is a true and correct copy of an e-mail from Bill Allen, local counsel for MBE, to Mr. Murphey dated March 7, 2006 at 10:23 a.m.

9. Attached hereto and incorporated herein by reference as **Exhibit D** is a true and correct copy of an e-mail from Mr. Murphey to Bill Allen dated March 7, 2006 at 7:06 p.m., in which Mr. Murphey reminded MBE's counsel that Mr. Mathis was required to appear in the proceeding before the Court in this case irrespective of what happened in the *Morgate* case.

10. Attached hereto and incorporated herein by reference as **Exhibit E** is a true and correct copy of an e-mail dated March 7, 2006 at 7:48 p.m. from Gregg Zucker of DLA Piper Rudnick responding to Mr. Murphey's e-mail referenced above as Exhibit D.

11. Attached hereto and incorporated herein by reference as **Exhibit F** is a true and correct copy of the March 16, 2006 condensed deposition transcript of Stuart Mathis conducted in this matter.

12. Attached hereto and incorporated herein by reference as **Exhibit G** is a true and correct condensed copy of the March 14, 2006 condensed deposition transcript of Don Higginson conducted in this matter.

13. Regarding the Motion for Protective Order filed by MBE's attorneys in this matter, MBE's attorneys did not attempt to resolve the referenced matters with defense counsel prior to filing that motion. Gordon & Rees attorneys did not receive any meet and confer communications from MBE's attorneys, and at no time (prior to receiving the motion) did MBE's attorneys indicate that they would not produce Mr. Mathis or Ms. Wehner because they were "senior executives" or for any other reason enumerated in that motion. MBE attorneys stated in an e-mail that Ms. Wehner's testimony was supposedly "irrelevant" to the proceedings in this case, but MBE's attorneys did not contact defense counsel to discuss limitation of the testimony of these witnesses, or to ask us to withdraw

our request to take their depositions. No MBE attorney ever offered alternate witnesses for defendants to depose in the stead of Mr. Mathis or Ms. Wehner.

14. I have been licensed to practice law by the State of Kentucky since 1993, and have been licensed to practice law by the State of Texas since 1998. I have been practicing law continuously since 1993. My practice has been mostly devoted to handling and trying intellectual property and other commercial litigation cases. I have also been admitted to practice, *pro hac vice*, in numerous federal courts throughout the United States, including the Eastern District of Arkansas. Through my practice, I have become familiar with the usual and customary hourly rates charged by lawyers in California, Texas and other jurisdictions, including the Eastern District of Arkansas, for rendering legal services in intellectual property and other commercial litigation matters similar to the above-captioned matter.

15. In February 2006, Gordon & Rees was hired to represent the defendants in the above-captioned case. I was personally involved in performing legal work in this matter, supervised much of the work performed, and am familiar with the work performed by others within Gordon & Rees on the defendants' behalves. I am familiar with the educational background and experience of the Gordon & Rees attorneys assigned to work on this matter, and I was involved with compiling the information contained in Exhibits H and I to this Declaration. Lawyers and paralegals from Gordon & Rees' California, Texas and Oregon offices participated in rendering services on behalf of the defendants in this matter.

16. Regarding Gordon & Rees' billing rates in this matter, lawyers in Gordon & Rees' California offices charge at the following rates per hour: Partners ($495), Associates ($295), Junior Associates ($250), Paralegals ($165). Lawyers in Gordon & Rees' Texas offices charge at the following rates per hour in this matter: Partners ($375), Senior Counsel ($295), Paralegals ($145). Lawyers in Gordon & Rees' Oregon office charge at

the following rates per hour in this matter: Partner ($350). David W. Sterling of the law firm of Barber, McCaskill, Jones & Hale, P.A. in Little Rock, Arkansas was retained as local counsel in this matter. Mr. Sterling's rate in this matter was $275 per hour.

17. The hourly rates listed above are reasonable for lawyers of our level of expertise in California, Texas and other jurisdictions in which I have practiced, including the Eastern District of Arkansas, as they relate to cases similar to the above-captioned matter. Those rates are also similar to the rates charged by law firms competitive with Gordon & Rees.

18. The lawyers and staff that worked on this matter in Gordon & Rees' California offices are (position and date of licensure in California in parentheticals): Miles D. Scully (Partner, 1987), Richard P. Sybert (Partner, 1978), Amy M. Darby (Associate, 2002), Maha Sarah (Associate, 2001), David Chasin (Junior Associate, 2003), Justin Lewis (Junior Associate, 2005), Camille Johnson (Junior Associate, 2005), and Katheryn Patterson (Paralegal).

19. The lawyers and staff that worked on this matter in Gordon & Rees' Dallas, Texas office are (position and date of licensure in parentheticals): Matthew D. Murphey (Partner, 1998 in California and 2005 in Texas), Eric M. Jaegers (Senior Counsel, 1993 in Kentucky and 1998 in Texas), Pat Milfeld (Paralegal).

20. The lawyers and staff that worked on this matter in Gordon & Rees' Portland, Oregon office are (position and date of licensure in parentheticals): Stuart Brown (Partner, 1976).

21. Defendants' local counsel, David W. Sterling, was licensed to practice law in the State of Arkansas in 1997.

22. Beginning on or about February 7, 2006 and continuing through the present day, Gordon & Rees provided legal services and advanced costs to the defendants in representing them in this litigation. Specifically, substantial amounts of time have been

spent by lawyers and paralegals at Gordon & Rees and by local counsel in connection with the plaintiff's complaint, its motion for temporary restraining order, defendants' opposition to the motion for temporary restraining order, defendants' motion to dismiss, plaintiff's response to the motion to dismiss, defendants' reply to plaintiff's response, plaintiff's motions for protective order and in limine, responses to those motions, defendants' answer and counterclaims, proposed findings of fact and conclusions of law, depositions and other discovery, and post-dismissal matters, among other things.

23.  From February 7, 2006 through March 17, 2006, Gordon & Rees and local counsel devoted 791.9 hours of time to this matter, for which the legal fees were $250,873.07. From March 18, 2006 through March 31, 2006, Gordon & Rees and local counsel devoted 132.4 hours of time to this matter, for which the legal fees were $37,531.50. Gordon & Rees spent a total of 924.3 hours of time defending this matter, and the total fees amount to $288,404.57. The calculation of the time spent and the fees charged is true and correct, and all of the time spent and fees charged in connection with this matter were reasonable and necessary for the proper representation of the defendants. Attached hereto and incorporated herein by reference as **Exhibit H** is a true and correct copy of an itemized listing of the attorneys' fees incurred by defendants in this matter.

24.  Also in connection with this case, defendants are indebted to Gordon & Rees for the total sum of $8,868.92 which represents costs and expenses incurred by this law firm as a direct result of this litigation. Attached hereto and incorporated herein by reference as **Exhibit I** is a true and correct copy of Defendants' Costs and Expenses in Support of Motion for Attorneys' Fees. Those costs and expenses include *pro hac vice* application fees, copying costs, witness fees, court reporter and transcript fees, and travel expenses, among others. The entries in Exhibit I are true and correct, and all services for which fees have been charged were actually and necessarily performed by Gordon & Rees for and on behalf of defendants in this case.

25. The time spent and legal fees, costs and expenses charged by Gordon & Rees to defendants in this matter would have been virtually the same regardless of whether plaintiff had filed its complaint with any one cause of action or all five of its causes of action. The vast majority of the research, analysis and other time spent by Gordon & Rees was common to all of plaintiff's claims in this matter, such that there would have been an insignificant difference in the time spent and fees charged had plaintiff filed any single one of its claims rather than all five claims.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 13, 2006.

ERIC M. JAEGERS