IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MAIL BOXES ETC., INC.                                                                    PLAINTIFF

v.                               No. 4:06CV00188 GH

PBC SERVICES, INC.; TOM WEEDMAN
and CANDICE WEEDMAN                                                                    DEFENDANTS

**<u>ORDER</u>**

On March 17th, plaintiff filed a notice of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(i) as defendants had not served an answer or motion for summary judgment.

Defendants filed a motion, on March 31st, to execute against the $25,000 bond posted on February 15, 2006 for the temporary restraining order ("TRO") requested by plaintiff. They state that, as a result of shutting down their Jacksonville store pursuant to the TRO on February 15th through the dismissal of this lawsuit on March 17th, they sustained damages in the form of lost profits in the amount of $12,470.79 and incurred costs of $7,082.26 for a total amount of $19,553.05. Defendants argue that the Eighth Circuit Court of Appeals has held that a voluntary dismissal is a determination on the merits of a case in which a temporary injunction issues such that a plaintiff and its sureties are liable on a bond creating a rebuttable presumption that the restrained or enjoined party is entitled to execution on the bond and recovery of provable damages up to the amount of the bond. In support of their request, defendants have submitted the affidavit of Tom Weedman regarding revenue and expenses relied upon in determining the amount of damages and

-1-

the supporting documentation; the affidavit of James B. Kuhn, a Certified Public Accountant, regarding his review and analysis of the Weedman affidavit and documentation that the projected lost gross profits based on the figures from the corresponding months in 2005 is the appropriate measure of damages; and the bill of costs.

Also on March 31st, defendants filed a motion for attorney's fees in the amount of $288,404.57 and costs totaling $8,868.92 incurred in connection with defending this action. This motion is supported by an affidavit of Matthew D. Murphey, a counsel of record, regarding the requested hourly rates and number of hours as well as costs and expenses. Although asserting that California law should be applied regarding this issue, defendants contend that they are entitled to recoup their attorney's fees whether California or Arkansas law is applied. Defendants state that they are entitled to their fees pursuant to the franchise agreements at issue and are entitled to those fees under Cal. Civ. Code §1032(b) as well as §1033.5(a) which defines "costs" as specifically including attorney's fees. They contend that even if they are not found not to be prevailing parties with respect to the breach of contract claims, they are prevailing parties with respect to the trademark claims which sound in tort and arise out of the franchise agreement at issue as California law allows recovery for fees for tort claims arising out of a contract. Defendants also argue that they are the prevailing parties as to the breach of contract claims under Arkansas law as defendants achieved the dismissal of the suit without any terms, conditions or monetary payment to the plaintiff and that the Eighth Circuit has held that a voluntary dismissal is a determination on the merits.

Thereafter, defendants filed, on April 13th, a motion for sanctions for violation of 28 U.S.C. §1927 due to plaintiff's lead attorneys consistently acting in bad faith by prosecuting a complaint they had no intention of taking to trial, abusing the judicial process, harassing the defendants,

wasting the resources of the Court, multiplying and abusing the discovery process, filing a patently frivolous motion for protective order, and circulating inflammatory and unprofessional correspondence. They argue that plaintiff prosecuted this case over the course of a month and then unilaterally dismissed it on the virtual eve of trial after prevailing of defendants' motion to dismiss illustrating that it was a vindictive and wasteful lawsuit filed and prosecuted in bad faith as a means of harming defendants for their refusal to renew the Jacksonville Franchise Agreement upon the terms demanded by plaintiff resulting in their attorneys wasting enormous amounts of judicial resources by needlessly multiplying the proceedings and causing defendants to incur nearly $300,000 in fees, costs and expenses. In support of their argument, defendants recount the time-line of the litigation, the discovery process, and Gregg Zucker's correspondence. Alternatively, defendants contend that the Court should use its inherent authority to sanction plaintiffs' attorneys for their bad faith and unreasonably multiplying the proceedings. This motion is supported by affidavit and exhibits.

On April 14th, plaintiff filed a response to the motion for bond that there has been no finding that the injunction was wrongfully entered pointing to the ruling on the TRO and the Court's denial of the motion to dismiss. It states that it made a strategic decision not to proceed to a jury trial on defendants' Morgate claims on one business day's notice in a forum other than the court where those claims had been pending for the past three years. Plaintiff asserts that the burden is on the defendants to establish the right to damages when a complaint is voluntarily dismissed without a final determination that the injunction was wrongfully issued as a voluntary dismissal does not necessarily signal that a injunction was wrongfully obtained. It argues that the Eighth Circuit case relied upon by defendants did not involve an action to execute against a bond, but involved damages

sought on a theory of restitution so there is no legal presumption that defendants' actions were valid and plaintiff was not denied a preliminary injunction. Plaintiff also contends that the claimed damages are without support as the costs are duplicative of those requested in the motion for attorney's fees and the damages claim is not supported by evidence as a gross profit margin figure is used based on figures a year before the closure.

That same date, plaintiff filed a response to the motion for attorney's fees countering that defendants have not prevailed in this litigation under either California or Arkansas law where there was a voluntary dismissal without prejudice prior to any determination on the merits and that the request of almost $300,000 exceeds all bounds of reasonableness. It also reviews the time-line of this case including its election to voluntarily withdraw its complaint rather then proceed to trial on as-yet-unfiled counterclaims on which it had not taken discovery and which duplicated the claims and issues pending in the Morgate action. Plaintiff asserts that the claim for attorney's fees is based on contractual provisions and, under California law, §1717(b)(2) specifies that there is no prevailing party when an action has been voluntarily dismissed and §1033.5(a)(10) limits the recovery of fees to situations where those fees are otherwise authorized by contract or statute and, under Arkansas law, a voluntary dismissal without prejudice means that neither party can be said to have prevailed.

It continues that defendants are not entitled to costs as they are not prevailing parties and the claimed fees and costs are excessive and unreasonable as more than $9,900 is sought per working day for rates roughly twice as high as those prevailing in Little Rock. Plaintiff also points to inconsistencies, errors and evidence of unreasonable billing.

Defendants filed a reply regarding the bond on April 21st starting with the assertion that plaintiff admits that it did not want to face an Arkansas jury that would decide whether plaintiff had

-4-

improperly terminated defendants' franchise and breached defendants' contract and plaintiff was the one that filed its claims in this forum rather than California where the Morgate litigation was pending. They again stress that the attempt to distinguish case law on the basis of a restitution theory rather than a motion to execute is a irrelevant distinction. Defendants continue that they used the 61% gross profit margin figure because it was the best available data in existence and if they had used the financial statements closest in time, it would have not have been an accurate representation as those would have been the busiest months so they used the same time period for the preceding year. Addressing plaintiff's assertion that net profits are the only means to evaluate the damages, defendants state that they were damaged not only by lost income, but by having to incur fixed costs – such as rent, equipment leases and salary to one employee – while their store was closed.

      That same date, defendants filed a reply on the issue of attorney's fees. They counter that, even to the extent that defendants cannot recover their fees on the breach of contract claims, California law is clear that fees are recoverable as costs as to the trademark claims as fees incurred in defending tort or other noncontract claims are recoverable after a pretrial dismissal so long as the terms of the contractual attorney fee provision are broad enough to embrace such claims and the trademark claims are tort-like. Defendants reiterate that they are still the prevailing parties under Arkansas law and the controlling law of the Eighth Circuit. They continue by challenging plaintiff's arguments that it was really the prevailing party and the reasons why the case was voluntarily dismissed when it was. Turning to the issue of the reasonableness of the requested fees, defendants assert that this was a commercial litigation matter for which they performed work in preparation for the expected trial, the hourly fees are within the range customarily charged by large law firm in Arkansas, the implications of this case weighed heavily in the large context of Morgate, the matter

was expedited, additional details of the time entries on the spreadsheet could invoke matters of attorney work product or other privileges, and any data entry errors are unintentional and inadvertent.

Plaintiff, on April 27th, filed a response regarding sanctions. It states why its decision to file suit in Arkansas was justifiable and why it choose to dismiss due to implications on the Morgate litigation. Plaintiff counters that it made every effort to cooperate with discovery even though the requests went beyond the issues framed in the pleadings. It declares that such sanctions are an extreme, highly unusual measure and are only warranted when an attorney multiplies the proceedings through vexatious and unreasonable conduct – and then limited to only the excess costs, expenses and fees. Plaintiff challenges the motion as being untimely filed under the Local Rules and arguing that it did not act in bad faith nor multiply the proceedings, that it cooperated in discovery while asserting legitimate objections in depositions and that defendants have not isolated the particular conduct purportedly multiplying the proceedings.

On May 4th, plaintiff supplemented its response as to fees by submitting a May 1st order by the United States District Court for the District of Oregon that applied California law that an award was not authorized absent some resolution of the underlying contract claims.

Defendants filed a reply concerning sanctions on May 4th that the motion was timely under the federal rules and plaintiff's attorneys' bad faith conduct was objectively unreasonable as they knew as of February 7, 2006 that defendants planned counterclaims.

On May 8th, defendants filed a reply to the supplemental response as to attorney's fees that the claim there was only under §1717 and not §§1032 and 1033.5.

Fed. R. Civ. P. Rule 65 (c) provides in relevant part:

> No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

The Court agrees with defendants that Middlewest Motor Freight Bureau v. United States, 433 F.2d 212, 243 (8th Cir. 1970), cert. denied 402 U.S. 999, 91 S.Ct. 2169, 29 L.Ed.2d 165 (1971), controls regarding the bond as illustrated below:

> This conclusion is also consistent with the generally adopted position that the voluntary dismissal of an injunction suit by a plaintiff without the consent of the defendant is a determination of the merits of a controversy so as to render the plaintiff and his sureties liable on the injunction bond. See *Annotation: Dismissal of Injunction Action or Bill without Prejudice as Breach of Injunction Bond*, 91 A.L.R.2d 1312 (1963). Here the carriers by their own actions rendered the issues in the main suit moot and procured the dismissal. They received the benefit of the temporary restraining order without ever proving the Commission order invalid; such proof is a prerequisite to the absolution of liability for those benefits.

See also, 91 A.L.R.2d 1312 ("As a general rule, the voluntary dismissal of a suit by the plaintiff, after obtaining an interlocutory injunction and giving a bond, when made without the consent of the defendant, is determinative of the controversy and is such a breach of the condition of the bond as to warrant a right of action upon it, the sureties being bound — absent a showing of connivance between the plaintiff and the defendant — on the theory that they assume the hazard of the plaintiff's independently abandoning his suit at any time before final submission.").

Thus, the next question is the measure of damages. The Court finds that Kuhn's analysis of the projected lost gross profits based on the figures from the corresponding months in 2005 is the appropriate measure of damages and so $12,470.79 will be awarded. The Court has also compared the cost details sought in Exhibit A to the bond motion and Exhibit B of the similar details for the fees motion. The differences between the two documents are the costs sought for delivery of documents, *pro hac vice* applications and fees, Pacer fees, and travel expenses. As travel expenses

are not properly considered as costs, the Court is persuaded that defendants are entitled to costs in the amount of $7,519.72. Therefore, defendants are entitled to $19,990.51 of the $25,000 bond posted by plaintiff.

In light of the parties' focus on California law as governing the issue of attorney's fees, the Court is persuaded that it should look to the California statutory and case law in resolving the issue.

Cal. Civ. Code § 1717 provides in part:

(a) In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Where a contract provides for attorney's fees, as set forth above, that provision shall be construed as applying to the entire contract, unless each party was represented by counsel in the negotiation and execution of the contract, and the fact of that representation is specified in the contract.

Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit.

****

(b)(1) The court, upon notice and motion by a party, shall determine who is the party prevailing on the contract for purposes of this section, whether or not the suit proceeds to final judgment. Except as provided in paragraph (2), the party prevailing on the contract shall be the party who recovered a greater relief in the action on the contract. The court may also determine that there is no party prevailing on the contract for purposes of this section.

(2) Where an action has been voluntarily dismissed or dismissed pursuant to a settlement of the case, there shall be no prevailing party for purposes of this section.

Cal.C.C.P. §1021 states "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided."

The relevant portions of Cal.C.C.P. §1032 provide:

(4) "Prevailing party" includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. When any party recovers other than monetary relief and in situations other than as specified, the "prevailing party" shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not and, if allowed may apportion costs between the parties on the same or adverse sides pursuant to rules adopted under Section 1034.

(b) Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding.

Cal.C.C.P. §1033.5 provides, in relevant part:

(a) The following items are allowable as costs under Section 1032:

>   (1) Filing, motion, and jury fees.
>
>   ****
>
>   (3) Taking, videotaping, and transcribing necessary depositions including an original and one copy of those taken by the claimant and one copy of depositions taken by the party against whom costs are allowed, and travel expenses to attend depositions.
>
>   ****
>
>   (10) Attorney fees, when authorized by any of the following:
>
>   >   (A) Contract.
>   >
>   >   (B) Statute.
>   >
>   >   (C) Law.

****

(b) The following items are not allowable as costs, except when expressly authorized by law:

****

>   (3) Postage, telephone, and photocopying charges, except for exhibits.

\*\*\*\*

(c) Any award of costs shall be subject to the following:

\*\*\*\*

> (5) When any statute of this state refers to the award of "costs and attorney's fees," attorney's fees are an item and component of the costs to be awarded and are allowable as costs pursuant to subparagraph (B) of paragraph (10) of subdivision (a). Any claim not based upon the court's established schedule of attorney's fees for actions on a contract shall bear the burden of proof. Attorney's fees allowable as costs pursuant to subparagraph (B) of paragraph (10) of subdivision (a) may be fixed as follows: (A) upon a noticed motion, (B) at the time a statement of decision is rendered, (C) upon application supported by affidavit made concurrently with a claim for other costs, or (D) upon entry of default judgment. Attorney's fees allowable as costs pursuant to subparagraph (A) or (C) of paragraph (10) of subdivision (a) shall be fixed either upon a noticed motion or upon entry of a default judgment, unless otherwise provided by stipulation of the parties.

Attorney's fees awarded pursuant to Section 1717 of the Civil Code are allowable costs under Section 1032 as authorized by subparagraph (A) of paragraph (10) of subdivision (a).

The case of Topanga and Victory Partners v. Toghia, 103 Cal.App.4th 775, 786-787, 127 Cal.Rptr.2d 104, 111-112 (Cal.App. 2 Dist. 2002) contains the following applicable excerpt:

> "[U]nder Santisas, when a trial court is presented with a contractual claim for attorney's fees by a defendant who has been voluntarily dismissed from a suit prior to trial, the court must deny such fees as are limited to the parties' contract claims. Regarding the noncontract claims, the court must look to the parties' contractual attorney's fees provision to determine if it defines who is a prevailing party or addresses voluntary pretrial dismissals. If the contract does not provide such guidance, the court must utilize its discretion in determining whether such defendant should be considered a prevailing party for the purpose of recovering attorney's fees as costs under [Code of Civil Procedure] sections 1032 and 1033.5. In exercising that discretion, the court may consider the reason for the dismissal, including whether the parties have reached their litigation objectives by settlement, judgment, or other means." (Silver v. Boatwright Home Inspection, Inc., supra, 97 Cal.App.4th 443, 452, 118 Cal.Rptr.2d 475.)

Thus, the Court finds that §1717 does not authorize attorney's fees for the contract claims. A more difficult question is presented by the Lanham Act claims in light of §§1032 and 1033.5 as interpreted by the California courts as to whether attorney's fees should be awarded as costs.

15 U.S.C.A. § 1117(a) provides in relevant part that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."

The case of <u>Gracie v. Gracie</u>, 217 F.3d 1060, 1071 (9th Cir. 2000), explains the application of §1117 as follows:

> As Carley correctly notes (in challenging the fee award to Rorion), the Lanham Act permits, but does not mandate, an award of attorneys' fees to a prevailing party in "exceptional circumstances." 15 U.S.C. §1117(a). Exceptional circumstances can be found when the non-prevailing party's case "is groundless, unreasonable, vexatious, or pursued in bad faith." <u>Interstellar Starship Servs., Ltd. v. Epix Inc.</u>, 184 F.3d 1107, 1112 (9th Cir. 1999) (internal quotation marks omitted). The above standard for exceptional circumstances applies to prevailing defendants as well as prevailing plaintiffs under the Lanham Act. See <u>Stephen W. Boney, Inc. v. Boney Servs., Inc.</u>, 127 F.3d 821, 827 (9th Cir. 1997). Here, Carley seeks attorneys' fees as a successful defendant, for prevailing in Rorion's counterclaim for infringement.
>
> A party alleging that the district court erred by failing to award attorneys' fees under §1117 faces an uphill battle. "The text of section 1117 places a heavy burden of an attorney arguing that the district court abused its discretion in refusing to award attorneys' fees," as we explained in <u>Polo Fashions, Inc. v. Dick Bruhn, Inc.</u>, 793 F.2d 1132, 1134 (9th Cir. 1986). "First, the remedy is available only in 'exceptional cases.' Second, the statute provides that the court 'may' award fees; it does not require them. Finally, the Senate Report expressly commends this decision to the discretion of the [trial] court." <u>Id.</u>

After consideration of the language of both Franchise Agreements as to attorney's fees, the language of §§1032 and 1033.5 as interpreted by the California courts, and the clear intent of the Lanham Act concerning attorney's fees, the Court is persuaded that no award of attorney's fees for defendants is warranted on the Lanham Act claims.

The Court now turns to the final issue of sanctions under 28 U.S.C.A. § 1927 and/or under inherent authority.

28 U.S.C.A. § 1927 states "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

The Court simply cannot find that the conduct of plaintiff's counsel was unreasonable, vexatious, or in bad faith. What the Court saw, and the record reflects, is determined and energetic representation by the attorneys for both sides. Moreover, the Court is aware that its long-standing policy of merging the trial on the merits with a hearing for preliminary injunction did play a role in the time-line from filing to dismissal. Finally, the Court is persuaded that events in the <u>Morgate</u> litigation colored how both sides viewed the actions of their counterparts.

Accordingly, defendants' March 31st motion (#65) for bond is granted. Defendants are entitled to $19,990.51 of the $25,000 bond posted by plaintiff. Defendants' March 31st motion (#67) for attorney's fees and their April 13th motion (#69) for sanctions are denied.

IT IS SO ORDERED this 15th day of March, 2007.

*George Howard, Jr.*
UNITED STATES DISTRICT JUDGE